UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMMY KOHR, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-1473 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## TEMPORARY RESTRAINING ORDER

**I.**

Before the Court are the plaintiffs' Tammy Kohr, Eugene Stroman on behalf of themselves and all others similarly situated and Robert Colton emergency motion for a temporary restraining order [DE #27] and the defendant's, the City of Houston (the "City") response [DE #33]. The Court has examined the pleadings on file, the plaintiffs' appendix that includes declarations and exhibits, the City's declarations and exhibits, the case law presented on the issues raised and determines that the plaintiffs' emergency motion for a temporary restraining order should be **GRANTED**.

**II.**

The plaintiffs brought this suit against the City as a result of the City's passage and enforcement of Houston Code of Ordinances No. 2017-261, Article III §§ 21-61 and 62. Relevant portions of the camping ban section prohibit the: (a) use of public space to street tents and other temporary structures; (b) use of camp stoves, grills, heaters and the like including other containers used to generate an open flame in public; and (c) accumulation of personal property, other than durable medical equipment, that cannot fit into a three – foot cubicle space.

Trumpeted as a part of the City's efforts to reduce homelessness, the Ordinance enacted a "camping ban", and City officials told of the forthcoming addition of hundreds of additional emergency shelter beds and temporary shelters. According to the Mayor's pronouncement, the camping ban and the additional beds and shelters would reduce homelessness and "aggressive panhandling." It would also create a safe and healthy environment for other homeless persons because sufficient shelters would be available to them.

## III.

On August 16, 2017, the Houston Police Department issued written notices to individuals located at the "Wheeler encampment:" informing those present that they were violating the camping ban and that failure to comply with the Ordinance "may result in the issuance of a criminal citation . . . or . . . arrest." As a result, the plaintiffs promptly filed their emergency motion seeking a temporary restraining order prohibiting the City from enforcing §§ 21-61 and 62 of the Ordinance until a full hearing might be had.

## IV.

## Analysis

A.   **Standard of Review – Applicable Law**

The underlying suit and the plaintiffs' emergency motion, raises the question of whether the Ordinance creates a "status of homelessness" that, when enforced, criminalizes that status in violation of the Eight Amendment to the federal Constitution. Criminalizing the status of an individual has long been prohibited by the Constitution. *Robinson v. California*, 370 U.S. 660, 666–67, 82 S. Ct. 1417, 1420, 8 L. Ed. 2d 758 (1962). Simply because the behavior of a person is considered undesirable, yet harmless, does not license the government to criminalize and/or

punish such behavior. *Id*. at 666; *see also Powell v. State of Tex*., 392 U.S. 514, 88 S. Ct. 2145, 20 L. Ed. 2d 1254 (1968).

In an appropriate circumstance, an aggrieved party may seek redress by way of a temporary restraining order or temporary injunction. In order to obtain such relief a plaintiff must establish that: (a) she is likely to succeed on the merits of her claim; (b) she will suffer immediate and irreparable harm if a court does not enjoin the alleged violation; (c) the government will suffer no harm were the status quo preserved pending adjudication on the matter; and, (d) the balance of hardships strongly favors the plaintiff. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994). The fact that the governmental entity has not fully enforced the alleged unconstitutional conduct does not bar a suit for injunctive relief where the alleged unconstitutional conduct is imminent or is in process. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342–43, 189 L. Ed. 2d 246 (2014).

### B.  *Undisputed Facts*

The need for shelter, and if available, protected shelter is a basic human need as stated by the Supreme Court in *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). The City does not challenge this basic human necessity. Moreover, it has not challenged the following facts asserted by the plaintiffs:

1) The term "homelessness" as defined by the Department of Housing and Urban Development includes those staying in emergency shelter, transitional housing, or safe haven with beds dedicated to homeless persons or, those persons who are unsheltered [See DE#___, Appendix to Motion, Ex. 5, p. 21];
2) The plaintiffs are unsheltered persons and therefore fall within the definition of those persons experiencing homelessness;
3) As of April 24, 2017, the percentage of homeless individuals within the counties Harris, Montgomery and Fort Bend was 0.061% of the combined population or, one (1) out of every 1,629 residents. *Id*. at p. 35;

4) According to the most recent and comprehensive data publicly available, there are over 1,000 unsheltered homeless person in Harris County [*Id.* at Ex. 6, p. 68, para 10]

5) Homeless adults are generally referred to one of five emergency shelters: The Star of Hope Men's Shelter, Star of Hope Women and Families Shelter, Salvation Army Men's Shelter, Salvation Army Family Shelter and Salvation Army Single Women's Shelter [*Id.* at p. 67];

6) On August 15 and 16, 2017, the Houston Police Department issued Citations to homeless individuals at the Wheeler encampment, including at least one named plaintiff, which Citation states in relevant part:

   **Warning**: Encampment Violation.

   A City of Houston law makes it illegal to encamp in a public place in Houston without permission from the City. **You Are Violating This Law** . . . If you do not stop encamping in a public place, a police officer may: Give you a ticket . . . [or] . . . Arrest you and take you to jail. *See* [*Id.* at pp. 75-76 par. 3-4];

7) The emergency shelters in Houston are full and have been so for years [*Id.* At 67 para. 16-17]. Therefore, homeless individuals wait in lines, daily, at the five shelters for any available space only to be turned away for lack of space. [*Id.* at pp. 75-76 para. 3-4].

**B.** ***Conclusion***

The plaintiffs have demonstrated that they are subject to a credible threat of being arrested, booked, prosecuted and jailed for violating the City of Houston's ban on sheltering in public. The evidence is conclusive that they are involuntarily in public, harmlessly attempting to shelter themselves—an act they cannot realistically forgo, and that is integral to their status as unsheltered homeless individuals. Enforcement of the City's ban against the plaintiffs may, therefore, cause them irreparable harm by violating their Eighth Amendment right to be free from cruel and unusual punishment due to their status of "homelessness." *Robinson*, 370 U.S. at 666–67. Moreover, there is no evidence that the City will suffer harm if a restraining order were issued, thereby, preserving the status quo that existed prior to the issuance of citations.

Therefore, the City of Houston is ENJOINED from enforcing the following provisions:

Houston Code of Ordinances § 21-62, prohibiting encampment in a public place, as defined in § 21-61(a), the unauthorized use of fabric, metal, cardboard, other materials as a tent or other temporary structure for living accommodation purposes or human habitation,

in any manner, including:

citations, arrests, written or verbal threats to cite or arrest, or seizure of materials used as a tent or other temporary structure for living accommodation purposes of human habitation,

against:

any person who lacks a fixed, regular, and adequate nighttime residence until this matter may be resolved by a full and fair hearing.

The parties shall confer concerning a preliminary injunction hearing and inform the Court concerning a jointly recommended date for a hearing on or before Monday, August 28, 2017.

It is so **ORDERED**.

SIGNED on this 22nd day of August, 2017.

_____
Kenneth M. Hoyt
United States District Judge