UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMMY KOHR, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-1473 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Pending before the Court are the plaintiffs' motion for a preliminary injunction and related attachments, (*See* Dkt. Nos. 48, 49, 59 & 61), together with the City's responses thereto. (*See* Dkt. Nos. 51, 52, 54, 62 & 63).[1] After careful consideration of the pleadings, motions, responses, testimony at the hearing and arguments of counsel, the Court determines that the plaintiffs' motion for preliminary injunction should be **DENIED**.[2] The temporary restraining order ("TRO") previously issued in this case is hereby **DISSOLVED**.

### II.   BACKGROUND

The plaintiffs, Tammy Kohr, Eugene Stroman, Janelle Gibbs, and Robert Colton (collectively, the "plaintiffs"), on behalf of themselves and a class of homeless persons similarly-situated, filed the instant action against the City of Houston (the "City") seeking, *inter alia*, preliminary injunctive relief from various city ordinances alleged to be violative of their First, Fourth, Eighth and Fourteenth Amendment rights under the U. S. Constitution. The plaintiffs

---

[1] The parties have filed various motions in limine and motions to strike in conjunction with the plaintiffs' motion for preliminary injunction (Dkt. Nos. 49, 51, 52, 53, 54 & 59), which the Court determines should be denied.
[2] Today, this Court addresses only the plaintiffs' motion for preliminary injunction and not the merits of the case, particularly, whether a tent constitutes a shelter.

contend that the City's enforcement of "no-camping" and/or "encampment" ordinances violates their rights to be free from cruel and unusual punishment under the Eighth Amendment and essentially criminalizes their "homeless" status, singling them out for disparate treatment.

On August 22, 2017, upon the plaintiffs' *ex parte* emergency application for a TRO, this Court entered a TRO enjoining the City from enforcing Houston Code of Ordinances §§ 21-61 to 21-62, which prohibits encampment in a public place as well as the unauthorized use of various materials as a tent or other temporary structure for living accommodation purposes or habitation in certain public spaces. On September 6, 2017, the Court extended the TRO as a result of challenges associated with the landfall of Hurricane Harvey throughout various parts of Houston. On October 17, 2017, the parties filed their Notice of Joint Scheduling Proposal agreeing to convene for a preliminary injunction hearing relative to the matter on October 31, 2017, and further agreeing to file exhibits and other supplemental evidence by October 25, 2017. Thereafter, the Court set the matter for a preliminary injunction hearing on October 31, 2017 at 9:30 a.m.

On October 31, 2017, the parties appeared before the Court for a hearing on the plaintiffs' motion for preliminary injunction relief. At the close of the evidence, the Court took the matter under advisement and hereby memorializes its factual findings and conclusions of law from that evidentiary hearing.[3]

## III. PRELIMINARY INJUNCTION STANDARD

The Court has jurisdiction to resolve this matter pursuant to 28 U.S.C. § 1331, as this case involves, *inter alia*, claims arising under the Constitution and laws of the United States, namely 42 U.S.C. § 1983 and the First, Fourth, Eighth and Fourteenth Amendments to the U.S.

---

[3] To the extent that any finding of fact is more properly characterized as a conclusion of law, or vice versa, the Court adopts it as such.

Constitution. Rule 65 of the Federal Rules of Civil Procedure authorizes a district court to issue an injunction. *See* Fed. R. Civ. P. 65.

A district court may grant the extraordinary relief of a temporary restraining order or preliminary injunction if the movant establishes four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer immediate and irreparable harm if the injunction does not issue; (3) that the threatened harm to the movant outweighs any injury or damage the preliminary injunction may cause to the defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

The movant "must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted." *Clark*, 812 F.2d at 993 (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). The decision whether to grant or deny a request for a preliminary injunction, however, is left to the sound discretion of the district court. *Miss. Power & Light Co.*, 760 F.2d at 621. Nevertheless, the Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (internal citation omitted).

## IV. ANALYSIS AND DISCUSSION

### A. Standing

As a threshold matter, the City argues that the plaintiffs lack standing to raise constitutional challenges to its encampment ordinance. Since standing is a jurisdictional requirement that cannot be waived and concerns this Court's very ability to adjudicate the instant dispute, the Court must first determine whether the plaintiffs have standing to assert the constitutional challenges now before it. A standing inquiry "raises the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues." *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (citing *Cook v. Reno*, 74 F.3d 97, 98 - 99 (5th Cir. 1996) (internal quotations and footnotes omitted)). "Standing is a jurisdictional requirement that focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.* The United States Supreme Court explains that in order to demonstrate Article III standing, a plaintiff must establish the following:

> First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*United States v. Hays*, 515 U.S. 737, 742 – 43 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 – 61 (1992)); *see also Sierra Club v. Peterson*, 185 F.3d 349, 360 (5th Cir. 1999).

To obtain injunctive relief, "an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas, Tex.*, 254 F.3d 551, 562 - 563 (5th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("'Past exposure to illegal

conduct does not in itself show a present case or controversy regarding injunctive relief.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 – 96 (1974)) (other citations omitted). Nevertheless, "if the injury is accompanied by 'any continuing, present adverse effects,' standing for injunctive relief can be found." *James*, 254 F.3d at 563 (citing *Lyons*, 461 U.S. at 102, 103 S. Ct. 1660 (internal quotations omitted) (quoting *O'Shea*, 414 U.S. at 495 - 96, 94 S. Ct. 669); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir.1992) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.")).

The plaintiffs' alleged claims do not traverse from speculative or abstract to concrete and imminent. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Lujan*, 504 U.S. at 560 – 61). Although the named plaintiffs in this case have cited varying degrees of exposure to the rigors of a life of homelessness and to the enforcement of the encampment ordinances, neither has been cited, arrested, prosecuted, or convicted of a violation of any of the ordinances for which they complain.[4] Their perceived threats of future criminal prosecution, without more, are an insufficient basis upon which to hold the encampment ordinance violative of the Eighth Amendment.

The Fifth Circuit in *Johnson v. City of Dallas, Tex.*, held that a district court in the Northern District of Texas lacked jurisdiction to issue a preliminary injunction enjoining the City of Dallas from enforcing a Texas criminal trespass statute against the plaintiff, reasoning that "[t]he law is well settled that 'a plaintiff who has not been prosecuted under a criminal statute does not normally have standing to challenge the statute's constitutionality.'" 61 F.3d 442, 444 (5th Cir. 1995) (internal citations and quotations omitted). In reliance on this authority, the

---

[4] The City also contests whether plaintiffs Tammy Kohr and Eugene Strohman are indeed unsheltered homeless individuals so as to qualify as adequate class representatives.

Court determines that the plaintiffs lack standing to challenge the constitutionality of the encampment ordinance on Eighth Amendment grounds in the absence of a citation or conviction for violating the ordinance. *Id.*

### B. The Plaintiffs' Motion for Preliminary Injunction

Notwithstanding the plaintiffs' lack of standing to assert a constitutional challenge to the encampment ordinance premised on an Eighth Amendment violation, the Court determines that the plaintiffs' motion for a preliminary injunction, to enjoin the City from enforcing the tent ban, codified at Houston Code of Ordinances §§ 21-61 to 21-62, against unsheltered homeless people, should be **DENIED**. As set forth above, a preliminary injunction is an extraordinary remedy that may only be granted if the plaintiffs clearly establish the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer immediate and irreparable harm if the injunction does not issue; (3) that the threatened harm to the movant outweighs any injury or damage the preliminary injunction may cause to the defendant; and (4) that the granting of the preliminary injunction will not disserve the public interest. *See Clark*, 812 F.2d at 993; *see also Nichols*, 532 F.3d at 372. The Court will address each of these four prerequisites in turn.

#### 1. Whether the plaintiffs have demonstrated a substantial likelihood of success on the merits?

The plaintiffs have failed to establish a substantial likelihood of success on the merits. The plaintiffs maintain that §§ 21-61 to 21-62 of the encampment ordinance violate their Eighth Amendment right to be free from cruel and unusual punishment, as applicable through the Fourteenth Amendment, because it punishes persons by virtue of their "homeless" status. As support for their position, the plaintiffs rely upon *Robinson v. California*, 370 U.S. 660, 666 (1962) as well as *Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992), for the

proposition that the ordinance is unconstitutional because it punishes involuntary conduct that necessarily arises from immutable status. This Court does not agree. Although the ordinance does prohibit certain conduct—namely, setting up "tents" or other temporary structures in public places for the purpose of habitation and to exclude others from those places--any person, regardless of whether he or she is homeless, using such temporary structures as living accommodations in a public place within the City is subject to this ordinance. Thus, the ordinance does not criminalize "homeless" status but rather prohibits obstructions that hinder the City from preserving public property for its intended purpose. *See Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218, 1231 (E.D. Cal. 2009) (finding Eighth Amendment inapplicable in case where the contested ordinance targeted conduct and not homeless status).

Also, the encampment ordinance facially appears to be a valid exercise of the City's discretionary police power. *See Powell v. Texas*, 392 U.S. 514, 532 (1968) (plurality opinion) (state statute punishing public intoxication is constitutionally permissible because it punishes an act, "being in public while drunk on a particular occasion," not a status, "being a chronic alcoholic."). The encampment ordinance's preamble indicates that it was enacted to help provide options for homeless persons, including access to shelters, short-and medium-term rental subsidies and programs to facilitate private employment. The City maintains that the goal of the encampment ordinance is to create safe environments for unsheltered homeless individuals living in the encampments as well as the general public living around the encampments. (Dkt. No. 57, p. 52, lines 21-23). It avers that the encampment ordinance was not passed to punish homeless people but rather was developed in response to the increased number of encampments developing throughout the City and the public health hazards that they pose. (Dkt. No. 47-1, p.1, ¶ 3; Dkt. No. 57, p. 79:22 - 25). Sergeant Sedgwick testified that the ordinance does not provide

for the issuance of a citation or the arrest of an individual for merely being present, sleeping or possessing personal property on the encampment sites. (*See* Dkt. Nos. 47 & 52). Against this extensive background, the Court cannot say that the plaintiffs have exhibited a substantial likelihood of success on the merits.

### 2. Whether a substantial threat exists that the plaintiffs will suffer immediate, irreparable harm if the injunction does not issue?

The plaintiffs have failed to establish how permitting the ordinance to remain effective would cause them irreparable harm. The Fifth Circuit has long recognized that, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Canal Auth. of the State of Florida*, 489 F.2d at 573. The encampment ordinance, as currently enacted and enforced, does not criminalize homelessness or violate any of the plaintiffs' guaranteed constitutional protections. It also does not ban sleeping in public but rather the erection of tents or other temporary structures to facilitate encampment or the accumulation of large amounts of property in public spaces.

Before an individual can be issued a citation for violating the encampment ordinance, for instance, several events must have occurred: (1) the individual must have first received a warning; (2) the individual's name, location, and warning content must be catalogued into a local database; and (3) and the individual must have been given an opportunity to comply. An individual can avoid the issuance of a citation by complying with the ordinance by taking down the tent or temporary living structure and/or removing other items that the ordinance prohibits. Before an individual can be arrested, he or she must have received a written warning, been offered a reasonable opportunity to comply with the prohibition, received an offer of shelter or other assistance from the Houston Police Department's Homeless Outreach Texas ("HOT") team or a designated affiliate and have refused the offer of shelter, assistance or an officer's directive.

The plaintiffs' speculative concerns regarding the encampment ordinance's impact on their employment, daily activities, protective shelter, personal possessions and the like, along with their anecdotal evidence concerning other barriers to shelter access and transportation, without more, are insufficient to demonstrate irreparable harm, especially in light of the evidence in the record that alternative living arrangements are available for unsheltered homeless persons living in the encampments. Further, even assuming the plaintiffs' allegations as true, speculative damages are not enough to warrant the extreme step of imposing a preliminary injunction. *See U.S. v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (declining to grant preliminary injunction simply to prevent the possibility of remote future injury).

### 3. Whether the threatened harm to the plaintiffs outweigh any injury or damage to the City?

The plaintiffs have not shown that the harm they would suffer substantially outweighs the harm that the injunction may cause the City and its residents. The City emphasizes that enforcement of the ordinances is driven by legitimate government interests of public safety and sanitation, as it is undisputed that the encampments have no running water, no restroom facilities and contain numerous personal items that have, in most instances, been infested with fecal matter, pests and other potentially harmful substances. These factors weigh against issuance of the preliminary injunction.

### 4. Whether granting the preliminary injunction will disserve the public interest?

The testimony adduced at the hearing establishes that allowing the encampments to continue in their current condition poses a greater detriment to the City and its residents moreso than any harm that may result from the City's enforcement of the ordinance. Since the TRO has been in effect, instances of homeless persons having been seriously injured or killed at or near

the encampment sites have been reported; trash and waste have accumulated, causing health hazards for both the general public as well as the inhabitants of the encampment sites; and members of the general public are precluded from using the spaces as originally intended, due to the erection of temporary living structures at these sites. The sites have no plumbing, sanitation or trash pick-up. Dr. David Persse, the City's Public Health Authority, testified that the encampments create an environment whereby communicable diseases may be transmitted to the inhabitants, neighboring communities and the general public at large. (Dkt. No. 57 at 134 – 36). Finally, the City has expended thousands of dollars, reportedly removing over 16 tons of waste from the Chartres and Wheeler encampment sites. (Dkt. No. 47-1 at 2). A preliminary injunction would only enable trash, pests, and human waste to continue to fester, creating a health nuisance for the community at large. While this Court is indeed sympathetic to the impact that enforcement of the encampment ordinance on unsheltered homeless individuals poses, the Court recognizes the City's police powers to enact and enforce reasonable legislation that promotes the health, safety and general welfare of all Houston residents. This factor weighs against issuance of the preliminary injunction.

The plaintiffs have not asserted a cognizable claim under the Eighth Amendment. The plaintiffs have failed to establish the requisite elements necessary to warrant the Court's issuance of the extraordinary relief they seek. Accordingly, the plaintiffs' motion for a preliminary injunction is hereby **DENIED**. The TRO previously issued is hereby **DISSOLVED**.

It is further **ORDERED** that the following docket control schedule shall now govern in this case:

| | |
|---|---|
| Motions to **AMEND PLEADINGS and/or JOIN NEW PARTIES** must be filed by: | January 30, 2018 |
| **PLAINTIFFS' EXPERTS** are to be designated by: | May 1, 2018 |
| **PLAINTIFFS' EXPERT REPORTS** are to be furnished by: | May 1, 2018 |
| **DEFENDANT'S EXPERTS** are to be designated by: | June 1, 2018 |
| **DEFENDANT'S EXPERT REPORTS** are to be furnished by: | June 1, 2018 |
| **DISCOVERY** must be completed by: | July 31, 2018 |
| **DISPOSITIVE MOTIONS** are to be filed and served by: | August 20, 2018 |
| **DOCKET CALL** is to be held at 11:30 a.m. on: | December 3, 2018 |
| **TRIAL** is set for: | TBA |

It is so **ORDERED**.

SIGNED on this 28th day of December, 2017.

Kenneth M. Hoyt
United States District Judge