UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| TAMMY KOHR, EUGENE STROMAN, and JANELLE GIBBS, on behalf of themselves and all others similarly situated, and ROBERT COLTON,<br><br>                                Plaintiffs,<br>        v.<br><br>CITY OF HOUSTON,<br><br>                                Defendant. | Civil Action No. 17-cv-1473 |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S SECOND AMENDED MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

NATURE AND STAGE OF PROCEEDING.................................... 1

ISSUES TO BE RULED UPON .................................................... 1

SUMMARY OF ARGUMENT ...................................................... 2

BACKGROUND ........................................................................... 3

I.   Plaintiffs Are Four Unsheltered Homeless Residents of Houston Who, Like Other Unsheltered Homeless People, Have Nowhere to Turn......................................................... 3

II.  Mayor Turner's Homelessness Plan Entailed Three Sets of Problematic Laws................ 4

III. Houston Police Made Credible Threats of Enforcement Against Plaintiffs ...................... 4

ARGUMENT.................................................................................. 5

I.   Plaintiffs Have Standing to Seek Protection from the City's Credible Threats of Enforcement .............................................................. 5

II.  Enforcement of the Tent Ban Against Unsheltered Homeless People Would Be Cruel .. 11

   A.   Plaintiffs Bring an As-Applied Challenge to the Tent Ban's Enforcement Against Unsheltered Homeless People............................................................. 12

   B.   It is Cruel to Punish Conduct that is an Unavoidable Result of Homelessness.... 14

III. Plaintiffs State a Plausible First Amendment Claim Against the Panhandling Ban......... 17

   A.   Enforcing the Panhandling Ban Causes a Continuing Violation ......................... 17

   B.   The Roadway Provision Violates the Free Speech Clause On Its Face................ 18

IV.  The Panhandling Ban is Standardless and Invites Discriminatory Law Enforcement ..... 22

V.   The Property Ban Violates the Fourth Amendment ....................................... 26

CONCLUSION ............................................................................. 30

CERTIFICATE OF SERVICE ..................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Ayotte v. Planned Parenthood of N. New England,*
  546 U.S. 320 (2006) ................................................................................. 13

*Boyle v. Landry,*
  401 U.S. 77 (1971) ............................................................................... 7, 8

*Browne v. City of Grand Junction,*
  136 F. Supp. 3d 1276 (D. Colo. 2015) ................................................... 20

*Catholic Leadership Coalition of Tex. v. Reisman,*
  764 F.3d 409 (5th Cir. 2014) ............................................................ 13, 14

*Champion v. Commonwealth,*
  520 S.W.3d 331 (Ky. 2017) .................................................................... 20

*Church v. City of Huntsville,*
  30 F.3d 1332 (11th Cir. 1994) ............................................................. 8, 9

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) ................................................................................. 26

*City of Los Angeles v. Manhart,*
  435 U.S. 702 (1978) ............................................................................... 16

*Citizens United v. Fed. Election Comm'n,*
  558 U.S. 310 (2010) ............................................................................... 21

*Clark v. Commty. for Creative Non-Violence,*
  468 U.S. 288 (1984) ............................................................................... 11

*Clatterbuck v. City of Charlottesville,*
  708 F.3d 549 (4th Cir. 2013) ................................................................. 19

*Cnty. of Riverside v. McLaughlin,*
  500 U.S. 44 (1991) ................................................................................... 3

*Cobine v. City of Eureka,*
  250 F. Supp. 3d 423 (N.D. Cal. 2017) ................................................... 13

*Cooper v. Aaron,*
  358 U.S. 1 (1958) ................................................................................... 12

*Cox v. Louisiana,*
  379 U.S. 536 (1965) ............................................................................... 21

*Cutting v. City of Portland,*
  802 F.3d 85 (1st Cir. 2015) ................................................................... 22

*East Foothill Blvd., Inc. v. City of Pasadena,*
  912 F.2d 1268 (C.D. Cal. 1996) ............................................................ 18

*Gresham v. Peterson,*
  225 F.3d 899 (7th Cir. 2000) ................................................................. 19

*Helling v. McKinney*,
    509 U.S. 25 (1993) ........................................................................................ 17

*Hill v. City of Houston*,
    789 F.2d 1103 (5th Cir. 1986) ...................................................... 2, 3, 22, 25

*Hoskins v. Bekins Van Lines*,
    343 F.3d 769 (5th Cir. 2003) ........................................................................ 7

*Ingraham v. Wright*,
    430 U.S. 651 (1977) ........................................................................ 7, 8, 9, 10

*Joel v. City of Orlando*,
    232 F.3d 1353 (11th Cir. 2000) .................................................................. 11

*Johnson v. City of Dallas*,
    61 F.3d 442 (5th Cir. 1995) ........................................................... 6, 7, 9, 10

*Joyce v. City of San Francisco*,
    846 F.Supp. 843 (N.D. Cal. 1994) ....................................................... 10, 11

*Katz v. United States*,
    389 U.S. 347 (1967) .................................................................................... 29

*Kolender v. Lawson*,
    461 U.S. 352 (1983) .............................................................................. 25, 26

*Kramer v. Price*,
    712 F.2d 174 (5th Cir. 1983) ...................................................................... 23

*Kuhnle Bros., Inc. v. Cnty. of Geauga*,
    103 F.3d 516 (6th Cir. 1997) ...................................................................... 18

*Lavalee v. Listi*,
    611 F.2d 1129 (5th Cir. 1980) .................................................................... 17

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ........................................................ 27, 28, 30

*Lehr v. City of Sacramento*,
    624 F. Supp.2d 1218 (E.D. Cal. 2009) ....................................................... 10

*Loper v. N.Y. City Police Dep't*,
    999 F.2d 699 (2d Cir. 1993) ....................................................................... 19

*Lowenberg v. City of Dallas*,
    168 S.W.3d 800 (Tex. 2005) ....................................................................... 17

*Marks v. United States*,
    430 U.S. 188 (1977) .................................................................................... 15

*McLaughlin v. City of Lowell*,
    140 F. Supp. 3d 177 (D. Mass. 2015) .................................................... 20, 21

*Montin v. Estate of Johnson*,
    636 F.3d 409 (8th Cir. 2011) ...................................................................... 18

*N.Y. Times Co. v. United States*,
    403 U.S. 713 (1971) .................................................................................... 18

*Nat'l Advertising Co. v. City of Raleigh*,
  947 F.2d 1158 (4th Cir. 1991) ...................................................................................... 18
*Norton v. City of Springfield*,
  806 F.3d 411 (7th Cir. 2015) ........................................................................................ 20
*Palermo v. Rolex*,
  806 F.2d 1266 (5th Cir. 1987) ......................................................................................... 7
*Palmer v. Johnson*,
  193 F.3d 346 (5th Cir. 1999) ........................................................................................ 17
*Papachristou v. City of Jacksonville*,
  405 U.S. 156 (1972) ................................................................................................ 25, 26
*Perez v. Laredo Junior Coll.*,
  706 F.2d 731 (5th Cir. 1983) .................................................................................. 2, 3, 18
*Peter Henderson Oil Co v. City of Port Arthur*,
  806 F.2d 1273 (5th Cir. 1987) ...................................................................................... 17
*Pottinger v. City of Miami*,
  810 F. Supp. 1551 (S.D. Fla. 1992) .............................................................................. 10
*Powell v. Texas*,
  392 U.S. 514 (1968) ................................................................................................ 15, 16
*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989) ...................................................................................................... 16
*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ...................................................................................................... 21
*Robinson v. California*,
  370 U.S. 660 (1962) ............................................................................................ 9, 15, 16
*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*,
  402 F.3d 962 (9th Cir. 2005) ........................................................................................ 30
*Screws v. United States*,
  325 U.S. 91 (1945) ........................................................................................................ 24
*Serafine v. Branaman*,
  810 F.3d 354 (5th Cir. 2016) ........................................................................................ 13
*Smith v. City of Ft. Lauderdale*,
  177 F.3d 954 (11th Cir. 1999) ...................................................................................... 19
*Speet v. Schuette*,
  726 F.3d 867 (6th Cir. 2013) ........................................................................................ 19
*Stokes v. Southwest Airlines*,
  887 F.3d 199 (5th Cir. 2018) ....................................................................................... 6, 7
*Thayer v. City of Worcester*,
  144 F. Supp. 3d 218 (D. Mass. 2015) ...................................................................... 20, 22
*Thibodeaux v. Bordelon*,
  740 F.2d 329 (5th Cir. 1984) .......................................................................................... 7

*United States v. England,*
  971 F.2d 419 (9th Cir. 1992) ........................................................................... 28
*United States v. Flores-Alejo,*
  531 F. App'x 422 (5th Cir. 2013) ..................................................................... 16
*United States v. Hill,*
  752 F.3d 1029 (5th Cir. 2014) ......................................................................... 29
*United States v. Jacobsen,*
  466 U.S. 109 (1984) .............................................................................. 2, 3, 27, 30
*United States v. Jones,*
  565 U.S. 400 (2012) ......................................................................................... 28
*United States v. Martinez-Fuerte,*
  428 U.S. 543 (1976) ......................................................................................... 29
*United States v. Paige,*
  136 F.3d 1012 (5th Cir. 1998) ......................................................................... 27
*United States v. Place,*
  462 U.S. 696 (1983) ......................................................................................... 29
*United States v. Stevens,*
  559 U.S. 460 (2010) ......................................................................................... 19
*Va. Hosp. Ass'n v. Baliles,*
  868 F.2d 653 (4th Cir. 1989) ........................................................................... 18
*Village of Schaumburg v. Citizens for a Better Environment,*
  444 U.S. 620 (1980) ......................................................................................... 19
*Women's Med. Ctr. v. Bell,*
  248 F.3d 411 (5th Cir. 2001) ........................................................................... 22
*Zarda v. Altitude Express, Inc.,*
  883 F.3d 100 (2d Cir. 2018) ............................................................................ 16

**Statutes**

Hous., Tex. Code § 21-61 ......................................................................................... 28
Hous., Tex. Code § 28-46 .................................................................................... 23,24
Texas Penal Code Section 42.03 .............................................................................. 21

## NATURE AND STAGE OF PROCEEDING

In April 2017, the City of Houston enacted laws restricting panhandling, living in tents, and accumulating property in public spaces. The City immediately deployed police officers to homeless encampments to threaten that enforcement would commence on May 12, 2017. Plaintiffs, who are each unsheltered homeless people, filed this case on May 12, 2017, seeking injunctive relief from unconstitutional enforcement of these laws.

On August 17, 2017, as the City prepared to enforce the tent ban against encampment residents *en masse*, Plaintiffs moved for a temporary restraining order enjoining enforcement of the tent ban. The Court granted a TRO in late August and extended it on consent of both parties in light of Hurricane Harvey. Following a hearing on October 31, 2017, the Court reversed its TRO holding and denied a preliminary injunction. From January through August 2018, the parties repeatedly agreed to stay this case's deadlines in light of their ongoing mediation.

Plaintiffs file this brief in opposition to the City's operative "Second Amended" Motion to Dismiss (Mot. to Dismiss), ECF No. 24.

## ISSUES TO BE RULED UPON

1.      Whether Plaintiffs allege standing to seek injunctive relief from each law at issue. Plaintiffs allege standing because they allege a "credible threat of enforcement." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342–43 (2014).

2.      Whether Plaintiffs have stated a claim that enforcing the tent ban against unsheltered homeless people would be unconstitutionally cruel. Plaintiffs have stated a claim because they allege that sheltering in public is an "unavoidable result" of their homelessness. *Jones v. City of Los Angeles*, 444 F.3d 1118, 1132–33 (9th Cir. 2006), *vacated pursuant to settlement agreement*, 505 F.3d 1006 (9th Cir. 2007).

3.      Whether Plaintiffs' First Amendment claim is barred by the statute of limitations. Plaintiffs' First Amendment claim is not barred because their claim results from a continuing violation. *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 735 (5th Cir. 1983).

4.      Whether the property ban effects unreasonable seizures in violation of the Fourth Amendment. The property ban unreasonably interferes with unsheltered homeless people's possessory interests by forcing them to abandon their property, and by Defendant's explicit threats to seize and destroy their property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

5.      Whether the panhandling ban is vague in violation of Due Process. The panhandling ban is vague because, among other things, the slang term "panhandling" is undefined, and because it puts "virtually unfettered discretion in the hands of the Houston police." *Hill v. City of Houston*, 789 F.2d 1103, 1110–11 (5th Cir. 1986) (en banc) (citations and quotation marks omitted).

## SUMMARY OF ARGUMENT

Plaintiffs have adequately alleged that Houston Police officers made "credible threats"— including dated written warnings—that they would enforce the tent ban against Plaintiffs Tammy Kohr, Eugene Stroman, and Janelle Gibbs on the day this case was filed. Am. Compl. ¶¶ 52–57, ECF No. 16. Plaintiffs need not demonstrate that they were cited or arrested prior to filing. *Driehaus*, 134 S. Ct. at 2342–43.

Plaintiffs have adequately alleged that Houston's emergency homeless shelters are full, and they have no choice but to be in public. Am. Compl. ¶¶ 8, 17, 27, 60–70. It is cruel to enforce the tent ban against Plaintiffs, because seeking shelter is an unavoidable consequence of their homelessness. *Jones*, 444 F.3d at 1137.

The panhandling ban unjustifiably restricts protected speech that Plaintiffs Tammy Kohr

and Robert Colton wish to engage in. Their First Amendment claim is not barred because it results from a continuing violation. *Perez*, 706 F.2d at 735.

Unsheltered homeless people have a possessory interest in their property. The property ban violates the Fourth Amendment by forcing them to abandon their property. *Jacobsen*, 466 U.S. at 113.

The panhandling ban restricts "solicitation," which is defined by reference to "panhandling," a term which is itself undefined. A criminal law based on an undefined slang term like "panhandling" is essentially standardless, and has the potential to encompass such a broad range of everyday behaviors that it puts "virtually unfettered discretion in the hands of the [Houston] police." *Hill*, 789 F.2d at 1110.

## BACKGROUND

**I.    Plaintiffs Are Four Unsheltered Homeless Residents of Houston Who, Like Other Unsheltered Homeless People, Have Nowhere to Turn**

Plaintiffs Tammy Kohr, Eugene Stroman, Janelle Gibbs, and Robert Colton are each unsheltered homeless residents of Houston.[1] Am Compl. ¶¶ 6, 16, 25, 36. Each Plaintiff became homeless involuntarily, and despite their best efforts, they cannot find housing or shelter. *Id.* ¶¶ 6, 8–9, 16–17, 25, 36. Ms. Kohr, Mr. Stroman, and Ms. Gibbs each live in a tent in a homeless encampment. *Id.* ¶¶ 7, 16, 26. Plaintiffs use a tent to serve their basic human need for shelter: their tents serve as protection from pests, weather, prying eyes, and violence. *Id.* ¶¶ 7, 16, 26.

There are more than 1,000 unsheltered homeless people in Harris County, the majority of

---

[1] Some Plaintiffs are no longer homeless, but they were homeless at the time this action was filed. Present-tense factual descriptions in this brief refer to the facts as alleged. For ease of reading, the facts refer to Tammy Kohr as presently homeless, even though she had housing by the time the Amended Complaint was filed.  Am. Compl. ¶¶ 11–12. Because Plaintiffs have filed a class certification motion, the relation back doctrine "preserve[s] the merits of the case for judicial resolution." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991).

whom reside on Houston's streets. *Id.* ¶ 58. While these 1,000 people engage in the lengthy and difficult process of searching for housing, they cannot fit in Houston's emergency shelters, which are full beyond capacity and have been so for years. *Id.* ¶¶ 58, 60–70.

## II.     Mayor Turner's Homelessness Plan Entailed Three Sets of Problematic Laws

In March 2017, Mayor Sylvester Turner announced a plan for furthering Houston's success in reducing homelessness. *Id.* ¶ 40. His plan included the laws that plaintiffs challenge here: a law banning "unauthorized use of . . . a tent or other temporary structure for living accommodation purposes or human habitation" in public ("tent ban"); "unauthorized accumulation of personal property . . . that would not fit in a container three feet high, three feet wide, and three feet deep" in public ("property ban");[2] and a set of laws severely restricting panhandling ("panhandling ban"). *Id.* ¶¶ 46–47. The Mayor specified that these laws were intended to "redirect those in encampments" from their "unacceptable locations," and to "reduce and/or eliminate panhandling" with an "aggressive anti-panhandling campaign." *Id.* ¶¶ 42, 83.

## III.    Houston Police Made Credible Threats of Enforcement Against Plaintiffs

Immediately after these bans were passed into law, Houston Police Department officers began threatening everyone in the encampment where Ms. Kohr, Mr. Stroman, and Ms. Gibbs live. *Id.* ¶¶ 52–53. The officers delivered written and verbal warnings that residents would be arrested for violating the tent and property bans if they did not pack up by May 12, 2017. *Id.* The officers also informed residents that a dump truck would come to the camp, and residents would have to choose what belongings to throw into the truck, or officers will do it for them. *Id.* ¶ 54. Officers warned Ms. Kohr, Mr. Stroman, and Ms. Gibbs, as well as everyone else in their

---

[2] While the tent ban and the property ban include some procedural prerequisites for enforcement, the police have already taken all the steps necessary to clear the way for immediate enforcement of these laws. Am. Compl. ¶¶ 52, 57 ("Yeah, this is the fine print: this is—this *is* the warning.").

encampment, on multiple occasions. *Id.* ¶¶ 53–57. Nevertheless, Plaintiffs intend to live in their tents and keep their bicycles and other bulky property, even if they are arrested. *Id.* ¶¶ 9, 24, 35.

Ms. Kohr and Mr. Colton both panhandle in ways prohibited by the panhandling ban: they panhandle near gas stations, restaurants, and ATMs; they hold signs; they politely persist after people say "no"; and they step into the road to accept money from stopped cars. *Id.* ¶¶ 13–14, 37–38. Ms. Kohr and Mr. Colton are unsure whether holding a sign seeking money, or telling people why they need money, is legal. *Id.* ¶¶ 15, 38. Ms. Kohr and Mr. Colton fear that they will be arrested for panhandling due to increased enforcement efforts under the new anti-panhandling campaign; they have also been harassed by the police for panhandling in the past. *Id.*

## ARGUMENT

### I.   Plaintiffs Have Standing to Seek Protection from the City's Credible Threats of Enforcement

This Court previously held that Plaintiffs have standing to challenge the tent ban because "they are subject to a credible threat of being arrested, booked, prosecuted and jailed for violating the . . . ban." TRO at 4, ECF No. 39. Although the Court later issued a contrary decision, Prelim. Inj. Order at 5–6, ECF No. 69, Plaintiffs respectfully request that the Court maintain its original decision. The City argues that Plaintiffs lack standing because they have not been convicted under any of the laws they challenge, which is wrong as a matter of law. The Court's original standing decision was correct because Plaintiffs were subject to a credible threat of prosecution at the time of filing. With the benefit of the more robust briefing below, Plaintiffs urge the Court reinstate its standing ruling from the TRO for three reasons.[3]

---

[3] The City's standing argument transitions from focusing exclusively on Plaintiffs' Eighth Amendment claim to an assertion, in the final two sentences, that Plaintiffs' entire case must be dismissed. Mot. to Dismiss at 5. Because the City did not actually brief reasons why Plaintiffs

**First**, requiring a conviction contradicts controlling Supreme Court precedent. Plaintiffs need not show they have been actually cited, arrested, or convicted to bring a pre-enforcement constitutional challenge to an ordinance. As the Supreme Court recently explained in *Driehaus*, a conviction is not required for standing to challenge the constitutionality of a criminal statute:

> One recurring issue in our cases is determining when the threatened enforcement of a law creates an Article III injury. When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. . . . Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent.

134 S. Ct. 2334, 2342 (2014).

The Court's denial of standing "in reliance on th[e] authority" of *Johnson v. City of Dallas*, 61 F.3d 442, 444 (5th Cir. 1995), was misplaced. Prelim. Inj. Order at 5. *Johnson* was plainly abrogated by the subsequently-issued Supreme Court decision in *Driehaus*. The Fifth Circuit held in *Johnson* that "a plaintiff who has not been prosecuted under a criminal statute does not normally have standing," and on the basis that none of the plaintiffs had been *convicted*, declined to hold that the plaintiffs had standing. 61 F.3d at 445.

*Johnson* is directly at odds with *Driehaus*. The Supreme Court could not have been clearer that conviction, or even citation, is not required for standing. 134 S. Ct. at 2342. This Court cited *Driehaus*, but did so only for the general principle that alleged harm must be sufficiently concrete and imminent. Prelim. Inj. Order at 5. The Court's decision must account for the full import of *Driehaus—credible threats alone* are sufficient for standing.[4]

_____

lack standing to bring their other claims,  Plaintiffs focus on their standing under the Eighth Amendment.

[4] The Fifth Circuit has repeatedly specified that "when the Supreme Court expressly or implicitly overrules one of our precedents, we have the authority *and obligation* to declare and

There can be no question that, applying this standard, Plaintiffs have alleged standing to challenge the tent ban, the property ban, and the panhandling ban. The Amended Complaint details multiple written and verbal threats to each named Plaintiff, and other encampment residents, that these laws would be enforced against them. Am. Compl. ¶¶ 15, 38, 44, 52–55. These warnings are more than enough to render the threat "sufficiently imminent." 134 S. Ct. at 2342. *Accord* TRO at 4 ("The plaintiffs have demonstrated that they are subject to a credible threat of being arrested . . . for violating the City of Houston's ban on sheltering in public.").

**Second**, to the extent that Defendant attempts to revive *Johnson* and carve out Plaintiffs' claims as an exception to the *Driehaus* standard, this argument should be rejected by the Court. *Johnson*'s reasoning is simply unpersuasive.

To support its now-abrogated holding that a conviction is a prerequisite for standing to assert an Eighth Amendment claim, the *Johnson* court cited two Supreme Court cases: *Ingraham v. Wright*, 430 U.S. 651 (1977), and *Boyle v. Landry*, 401 U.S. 77 (1971).[5] Neither case stands for that proposition. *Ingraham* held that the Eighth Amendment is inapplicable to "paddling of children . . . in public schools," because it is punishment outside the "criminal process." 430 U.S. at 664, 666–68. *Boyle* concerned a pre-enforcement challenge to a number of Chicago laws that

implement this change in the law." *Stokes v. Southwest Airlines*, 887 F.3d 199, 204 (5th Cir. 2018) (quotation marks and citations omitted). Because *Driehaus* "disavows the mode of analysis on which [*Johnson*] relied," this Court is no longer bound by *Johnson*, and is instead bound to follow *Driehaus* as Supreme Court precedent. *Stokes*, 887 F.3d at 204; *accord Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003) (abandoning prior panel analysis in favor of analysis mandated by the Supreme Court).

[5] The opinion also quoted a prior Fifth Circuit decision that ultimately traces back to *Ingraham*. *Johnson*, 61 F.3d at 444 (quoting *Palermo v. Rolex*, 806 F.2d 1266 (5th Cir. 1987) (citing *Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir. 1984) (citing *Ingraham*)). Both *Palermo* and *Thibodeaux* are irrelevant: like *Ingraham*, these cases reject Eighth Amendment claims about punishment *outside the criminal process*. *Palermo*, 806 F.2d at 1268 (employee discipline); *Thibodeaux*, 740 F.2d at 331 (negligent injury to pretrial detainee).

police used to intimidate Black residents; the plaintiffs there lacked standing because they failed to allege that they, specifically, would be targeted for prosecution. 401 U.S. at 80–81.

*Ingraham*, in fact, specifically noted that the Eighth Amendment is intended "to limit the power of those entrusted with the criminal-law power over government," and "circumscribes the criminal process" by "impos[ing] substantive limits on what can be made criminal." *Ingraham*, 430 U.S. at 664, 666–67. And *Boyle* ruled the plaintiffs lacked standing because they failed to show actual injury from "threats or actual prosecutions"—the negative implication being that an enforcement threat *does* establish standing. 401 U.S. at 80–81 ("the complaint contains no mention of any specific threat"). Far from limiting the Eighth Amendment to post-conviction relief, these precedents authorize courts to "circumscribe the criminal process" based on a "threat" of unconstitutional enforcement. *Ingraham*, 430 U.S. at 667; *Boyle*, 401 U.S. at 80.

Because the Eighth Amendment "limits the power" of the police and "circumscribes the criminal process" by limiting "what can be made criminal," *Ingraham*, 430 U.S. at 664, 666–67, federal courts can enforce these limits when the police threaten to transgress them. Relief must be available "to prevent an injurious act by a public officer" that violates federal law. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) (citation omitted).

Multiple courts agree, for reasons best stated by the Eleventh Circuit: "Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Church v. City of Huntsville*, 30 F.3d 1332, 1338–39 (11th Cir. 1994) (citations and quotation marks omitted). On this basis, the court held that a class had standing to "enjoin the City from arresting, harassing, or removing the plaintiffs because of their homeless status." *Id.* 1338–39. "Because injunctions regulate future conduct," plaintiffs had standing to protect their Eighth Amendment rights, based on the "substantial likelihood" that police would harass the

8

class in the future. *Id.* at 1337, 1339.

Likewise, in *Jones v. City of Los Angeles*, the Ninth Circuit issued an even more robust ruling, upholding the homeless plaintiff class's standing and explicitly disavowing *Johnson*. *Jones* reiterated that the Eighth Amendment "governs the criminal law process as a whole, not only the imposition of punishment postconviction." 444 F.3d at 1128–29 (citing *Ingraham*, 430 U.S. at 666, and *Robinson v. California*, 370 U.S. 660, 666 (1962) (holding that criminalizing a disease would "doubtless" violate the Eighth Amendment)). The injury inflicted by an unconstitutional law begins with initiation of the criminal process—at arrest, citation, or even as the police prepare for enforcement. *Id.* at 1129 (collecting cases). The court explained that, if federal courts lacked the power to enjoin infliction of this injury,

> the state could in effect punish individuals in the preconviction stages of the criminal law enforcement process for being or doing things that under the [Eighth Amendment] cannot be subject to the criminal process. But the [Eighth Amendment] limits the state's ability to criminalize certain behaviors or conditions, not merely its ability to convict and then punish post conviction.

*Id.* Rejecting *Johnson*, the Ninth Circuit held that "[i]n focusing on this lack of a conviction, the Fifth Circuit . . . fail[s] to recognize the distinction between the Cruel and Unusual Punishment Clause's first two protections and its third," which is the substantive limit on what can be made criminal at all. *Id.* at 1130.

District courts have reached the same conclusion for the same reasons. *Anderson v. City of Portland*, 2009 WL 2386056, at *4 (D. Or. July 31, 2009) (explicitly rejecting *Johnson*: "I do not find that *Ingraham* limits Eighth Amendment challenges to those plaintiffs who have been convicted of a crime"); *Lehr v. City of Sacramento*, 624 F. Supp.2d 1218, 1224 (E.D. Cal. 2009) ("[P]roof of a conviction is not a prerequisite . . . ."); *Joyce v. City of San Francisco*, 846 F. Supp. 843, 853–54 (N.D. Cal. 1994) ("[T]he City claims the . . . Eighth Amendment [is] limited only to

those convicted of crimes, [but] this proposition is refuted by the express language of *Ingraham*.") (citations omitted); *see Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559–60 (S.D. Fla. 1992) (ordering preliminary injunction: "The evidence overwhelmingly shows that plaintiffs have no place where they can be without facing the threat of arrest.").

In short, *Johnson* was a misguided decision that courts around the country have rejected. There is no doctrinal reason to revive it.

**Finally**, Plaintiffs write to correct the City's repeated misrepresentations of the Amended Complaint. The City claims that the Amended Complaint "does not, on its face, show that [Plaintiffs] were even issued a warning before they filed this case. In fact, they were not warned under the ordinance until after they filed." Mot. to Dismiss at 5 (citation omitted). This is false. To pick just one example, Plaintiffs allege in Paragraph 53:

> Houston Police Department officers . . . told Tammy, Gene, Janelle, and the other encampment residents that they would be prosecuted after May 12th if they did not stop sheltering themselves . . . . The officers also served Tammy, Gene, Janelle, and the other encampment residents with a written threat to enforce the camping ban, which read 'Starting on May 12th, A City of Houston law will prohibit encampments in public places in Houston without permission from the City.'

The City also claims that the Amended Complaint "do[es] not make any showing that [Plaintiffs] would refuse to take down a tent." Mot. to Dismiss at 4–5. Again, this claim is false:

> Tammy intended to keep using her tent for shelter . . . even if the City arrested her for violating the camping ban. . . . Gene . . . intends to keep using his tent, . . . even if the City prosecutes him for violating the camping ban. . . . Janelle intends to keep using her tent to shelter herself . . . even if the City prosecutes her . . . .

Am. Compl. ¶¶ 9, 24, 35. The City should voluntarily strike these misrepresentations and related discussion[6] from its motion.

---

[6] Specifically, the final paragraph beginning on page 4 and the first full paragraph on page 5.

## II.     Enforcement of the Tent Ban Against Unsheltered Homeless People Would Be Cruel

This case poses a narrow question. If a homeless person has nowhere else to go, is it cruel and unusual under the Eighth Amendment to punish her for taking shelter in a tent?

This case is *not* a facial challenge seeking to strike a camping ban altogether. *Cf. Tobe v. City of Santa Ana*, 892 P.2d 1145, 1152 (1995) (rejecting facial challenge to camping ban). This case is *not* about punishing people who refuse offers of shelter,[7] *cf. Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) (rejecting claim by plaintiffs who had access to shelter); or refuse to vacate public parks, *cf. Joyce v. City of San Francisco*, 846 F. Supp. 843, 846 (N.D. Cal.1994) (upholding program to end camping in public parks); or choose to camp in public as a protest, *cf. Clark v. Commty. for Creative Non-Violence*, 468 U.S. 288, 296 (1984) (concerning activists seeking to camp on the National Mall). The City's brief raises each of these irrelevant questions, and the Court should set them aside.

There is one narrow question posed by Plaintiffs' claim: is it cruel to enforce Houston's tent ban against homeless people who lack access to other shelter? Enforcing a criminal law is cruel if it punishes an unavoidable result of homelessness. Because sheltering in public is an unavoidable result of homelessness, it is cruel to enforce the tent ban against the Plaintiffs.

Last August, this Court agreed, holding Houston's tent ban to be unconstitutionally cruel as applied against the narrow class of people who are "involuntarily in public, harmlessly attempting to shelter themselves." TRO at 4. This holding correctly interpreted the Eighth Amendment standard and the scope of the Plaintiffs' claim. The Court later reversed its decision, holding that Plaintiffs' Eighth Amendment claim failed because the ordinance prohibits "conduct"

---

[7] Plaintiffs allege that there is no shelter available. Am. Compl. ¶¶ 1–2, 58–70. The Court must accept that allegation as true.

by "any person, regardless of whether he or she is homeless." Prelim. Inj. Order at 7.[8]

Respectfully, the Court's later ruling misapprehended Plaintiffs' claim. Plaintiffs do not

contend that the tent ban is *facially* unconstitutional, or that it is a *targeted* prohibition.[9] But it is

unconstitutional to enforce the ban against someone whose guilt is an unavoidable result of

homelessness. Pls.' Mem. in Supp. of TRO at 14, ECF No. 28 (discussing why the tent ban is

unconstitutional "as applied"). As applied to unsheltered homeless people, the tent ban is cruel,

because it punishes their unavoidable attempt to meet a basic human need.

Plaintiffs incorporate by reference their initial briefing on the Eighth Amendment

standard, Pls.' Mem. in Supp. of TRO at 7–15; Pls.' Reply in Supp. of TRO at 3–5, ECF No. 36,

and supplement this briefing below on two points related to the Court's preliminary injunction

ruling. First, Plaintiffs discuss why it is irrelevant that the tent ban applies to "any person,

regardless of whether he or she is homeless." Prelim. Inj. Order at 7. Second, Plaintiffs discuss

why it is irrelevant that the ban prohibits "conduct." *Id.*

A.      **Plaintiffs Bring an As-Applied Challenge to the Tent Ban's Enforcement
        Against Unsheltered Homeless People**

There are two basic types of constitutional challenges to a law: challenges to a law on its

face, and challenges to a law as applied. It is critical for a court to "properly define" the scope of

relief sought because "facial and as-applied challenges have different substantive requirements."

---

[8] The ruling also noted that the tent ban is a "valid exercise of the City's discretionary police
power." Prelim. Inj. Order at 7. Of course, any law that violates the Constitution is by definition
not "valid." U.S. Const. Art. VI, cl. 2 ("This Constitution . . . shall be the supreme law of the
land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of
any State to the contrary notwithstanding."); *Cooper v. Aaron*, 358 U.S. 1, 19 (1958) (discussing
police power: "[S]uch responsibilities, like all other state activity, must be exercised consistently
with federal constitutional requirements as they apply to state action.").

[9] The Court should disregard the City's misleading suggestion to the contrary, Mot. to Dismiss at
6 ("This ban was not put in place to target homeless individuals . . . ."). The purpose of the ban is
irrelevant to whether enforcement against Plaintiffs is cruel.

*Catholic Leadership Coalition of Tex. v. Reisman*, 764 F.3d 409, 425 (5th Cir. 2014). An as-applied challenge does not require a plaintiff to show that application of the challenged law is *facially* unconstitutional—the law may be constitutional in some or even most applications. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("It is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another.") (citation omitted). Instead, an as-applied challenge is a narrow claim, requiring only that the plaintiff show that the law operates unconstitutionally against her because of her "particular circumstances." *Catholic Leadership Coalition*, 764 F.3d at 426.

Accordingly, to sustain an as-applied challenge, a court need not find that a challenged law is unfairly written, or strike down the law as a whole. *Id.* Instead, the Court need only enjoin application of the law in the "particular circumstances" raised by the plaintiffs. *Id.*; *accord Ayotte*, 546 U.S. at 328–29 ("We prefer . . . to enjoin only the unconstitutional applications of a statute while leaving other applications in force . . . ."). A law need not be "invalidated . . . wholesale" when "[o]nly a few applications" of the law "would present a constitutional problem." *Id.* at 331; *accord Serafine v. Branaman*, 810 F.3d 354, 363 (5th Cir. 2016) (declining to entertain facial challenge "when a narrower remedy will fully protect the litigants.").

This distinction is important for laws criminalizing homelessness. It is rare for U.S. cities to enact laws that facially target homeless people. Eighth Amendment jurisprudence on sleeping bans and tent bans does not concern facially discriminatory ordinances; these cases are as-applied challenges to generally applicable laws.[10] The question in these cases is not whether the

---

[10] *E.g.*, *Jones*, 444 F.3d at 1123 ("No person shall sit, lie or sleep in or upon any street, sidewalk or other public way."); *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 428 (N.D. Cal. 2017) ("[N]o person shall camp in any public of private space or public or private street . . . .");

ban facially targets homeless people (none do), or whether the ban is necessarily unconstitutional in every application (none are). The question is whether, as applied against unsheltered homeless people, the ban is cruel. These cases have held that the answer is "yes."

Here, Plaintiffs challenge application of a law prohibiting "unauthorized use of . . . a tent or other temporary structure for living accommodation purposes or human habitation" in public, Hous., Tex. Code §§ 21-61 to -62, which, as the Court correctly noted, restricts "any person, regardless of whether he or she is homeless." Prelim. Inj. Order at 7. But it does not follow that the law is constitutional. Plaintiffs challenge this law *as applied* to unsheltered homeless people. The question is not whether the law *targets* homeless people. The question is whether, given the Plaintiffs' "particular circumstances," applying the law to them is cruel because it punishes the unavoidable result of their homelessness. *Catholic Leadership Coalition*, 764 F.3d at 425.

For the reasons outlined below and in the Plaintiffs' prior briefing, Pls.' Mem. in Supp. of TRO at 7–15; Pls.' Reply in Supp. of TRO at 3–5, enforcing the tent ban against unsheltered homeless people punishes the unavoidable results of their homelessness. The Court should reinstate its TRO holding that it is cruel to enforce the tent ban against Plaintiffs.

**B.      It is Cruel to Punish Conduct that is an Unavoidable Result of Homelessness**

The Court's ruling also noted that the tent ban criminalizes conduct, rather than homelessness itself. Prelim. Inj. Order at 7. This observation coincides with the Court's discussion of what the ordinance facially "targets," which, as explained above, is analytically irrelevant to Plaintiffs' as-applied claim. Plaintiffs write briefly to clarify that, if the "conduct" observation played any part in the Court's analysis, the Court should abandon that approach.

---

*Johnson*, 860 F. Supp. 344, 350 n.4 (N.D. Tex. 1994) ("A person commits an offense if he sleeps or dozes in a street, alley, park, or other public place.").

Plaintiffs previously explained why it does not end the inquiry to say a law facially prohibits conduct. Pls.' Mem. in Supp. of TRO at 7–15. To summarize, *Robinson v. California*, 370 U.S. 660 (1962), is a controlling Supreme Court case that forbid criminalization of narcotic addiction as unconstitutionally cruel. *Robinson*'s underlying principle is that it is cruel to punish a "chronic condition," or a "continuing offense" that " continues after it is complete and subjects the offender to arrest at any time before he reforms." *Id.* at 662–63. Based on *Robinson* alone, it is cruel to apply the tent ban to an unsheltered homeless person. It is hard to see how a homeless person could be punished for "use of . . . a tent . . . for living accommodation purposes," § 21-61—essentially, living in a tent—without being punished for the "chronic condition" of having no other living accommodation, or a "continuing offense" that "subjects the [homeless person] to arrest any time before he [finds housing]." *Robinson*, 370 U.S. at 662–63.

It is inconsistent with the spirit of *Robinson* to condemn laws criminalizing a "chronic condition" as cruel, while condoning laws that criminalize the unavoidable conduct caused by that same condition. This is what a majority of the justices recognized in *Powell v. Texas*, 392 U.S. 514 (1968). While *Powell* did not result in a controlling opinion,[11] five justices expressed agreement with a principle that is critical to this case. Justice White put that principle best in his concurrence: it makes no sense to "forbid[] criminal conviction for being sick with the flu" (*i.e.*, a condition), but permit "punishment for running a fever" (*i.e.*, the unavoidable conduct or result). *Id.* at 548 (White, J., concurring in the judgment). Applying Justice White's concurrence to this case, a homeless person cannot be punished for performing performing unavoidable acts in

---

[11] *Powell* is a critical case that the City hastily mischaracterizes. The City quotes from the plurality as if it is a binding majority opinion. Mot. to Dismiss at 7. The plurality opinion lacks precedential value outside its precise facts, because the sole concurrence from Justice White disagreed with the plurality's reasoning. *Marks v. United States*, 430 U.S. 188, 193 (1977). The reasoning in the *Powell* plurality is not binding authority.

public if he has "no place else to go." *Id.* at 551; *see id.* at 570 (Fortas, J., dissenting) (expressing agreement by four justices for someone who "does not appear in public by his own volition"). The import of *Powell* is this: *Robinson* is not a toothless holding that controls only the way a law is phrased. Instead, *Robinson* puts a substantive limit on laws that are cruel in their application. In some cases, laws facially punishing conduct are cruel, because the law as applied punishes the unavoidable result of a "chronic condition" like homelessness.

As Plaintffs have noted, many other courts agree with this analysis. Pls.' Mem. in Supp. of TRO at 10–11; Pls. Reply in Supp. of TRO at 4–5.[12] Most significantly, the only Fifth Circuit case meaningfully interpreting *Robinson* agreed that its holding imposes limits on what *conduct* can be punished. *United States v. Flores-Alejo*, 531 F. App'x 422, 426 (5th Cir. 2013) (per curiam). Specifically, the Circuit held that to determine whether a punishment violates the Eighth Amendment, courts "must" consider whether the punishment concerns conduct that was the unavoidable result of an involuntary status. *Id.* ("[W]e must view as a whole the voluntary acts he committed . . . and his purportedly involuntary act . . . ."). The weight of authority dictates that, under *Robinson*, it is cruel to punish conduct that is the unavoidable result of homelessness.

The remaining elements of Plaintiffs' Eighth Amendment claim are straightforward. Seeking shelter is unavoidable conduct because shelter is a basic human need. *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Palmer v. Johnson*, 193 F.3d 346, 349 (5th Cir. 1999). The

---

[12] The Supreme Court has applied this principle in the context of sex-based employment discrimination: employers cannot use facially neutral traits like life expectancy, *City of Los Angeles v. Manhart*, 435 U.S. 702, 709–11 (1978), or conformance with gender stereotypes, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989), to discriminate against women. "[A]ny meaningful regime of antidiscrimination law" must forbid using traits with a discriminatory impact "as a proxy for sex." *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 112 (2d Cir. 2018). This Court should apply the same reasoning. If the government is permitted to punish conduct that is a proxy for homelessness, the Eighth Amendment will not impose any "meaningful regime" that puts substantive limits on punishing homelessness itself.

Amended Complaint establishes that no other shelter is available, and Plaintiffs are involuntarily in public. Am. Compl. ¶¶ 8, 17, 27, 60–70. Thus, it is an unavoidable result of their homelessness that Plaintiffs seek shelter in tents or other temporary structures on public property. Punishing this conduct is cruel and violates the Eighth Amendment.[13]

### III.    Plaintiffs State a Plausible First Amendment Claim Against the Panhandling Ban

#### A.    Enforcing the Panhandling Ban Causes a Continuing Violation

The Court can easily dispose of the City's argument that Plaintiffs' First Amendment claim is time barred. So long as the City keeps enforcing the ban, it constitutes a continuing violation[14] of the First Amendment. *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 735 (5th Cir. 1983) (holding that a "continuing unlawful policy or practice" is a continuing violation).[15] This

---

[13] The Court's preliminary injunction ruling made a number of findings concerning the intent of the tent ban, prerequisites for enforcing the tent ban, and the availability of shelter. Prelim. Inj. Order at 7–9. When making this preliminary ruling, the Court was limited to weighing pre-discovery evidence presented by the parties. The standard at this stage is different, and the Court must accept Plaintiffs' factual alleations as true. As discussed above, the intent of the tent ban is irrelevant to Plaintiffs' as-applied Eighth Amendment claim, and the Court must accept as true Plaintiffs' allegation that there is no available shelter.

    Respectfully, the Court's holding that an unsheltered homeless person can temporariliy avoid enforcement by taking down their tent misses the point. Prelim. Inj. Order at 8. It is unavoidable that she will need shelter and put her tent back up, thus subjecting her to citation. § 21-63(a).The Court's holding that the tent ban requires officers to "offer [] shelter" before arrest is also incorrect. Prelim. Inj. Order at 8. An officer is permitted to make an arrest if she is "not [] able to obtain [] assistance" for the homeless person. § 21-63(c)(3)(a).

[14] Defendants improperly rely on *Peter Henderson Oil Co. v. City of Port Arthur*, 806 F.2d 1273, 1275 (5th Cir. 1987), which holds that in the regulatory takings context, injury accrues at the moment at which the ordinance passes. In that context, "it is passage of the ordinance that injures a property's value or usefulness," thereby triggering the accrual date. *Lowenberg v. City of Dallas*, 168 S.W.3d 800, 802 (Tex. 2005). No such accrual occurs when an ordinance requires or prohibits conduct: for those ordinances, the injury accrues the moment at which the ordinance is enforced against them. *See id*. Indeed, one of the authorities the City cites, *Lavalee v. Listi*, 611 F.2d 1129 (5th Cir. 1980), reverses a dismissal based on the continuing violation doctrine.

[15] *See also Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) ("[C]ontinued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations."); *Montin v. Estate of Johnson*, 636 F.3d 409, 416 (8th Cir. 2011) (concluding policy inflicted

is particularly salient in the First Amendment context. *See N.Y. Times Co. v. United States*, 403

U.S. 713, 714–15 (1971) (Black, J., concurring) ("[E]very moment's continuance of the

injunctions against these newspapers amounts to a . . . continuing violation of the First

Amendment."); *Nat'l Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1168 (4th Cir. 1991)

("[I]t is doubtful that an ordinance facially offensive to the First Amendment can be insulated

from challenge by a statutory limitations period . . . ."); *3570 East Foothill Blvd., Inc. v. City of

Pasadena*, 912 F. Supp. 1268, 1278 (C.D. Cal. 1996) (holding statute that facially "violates . . .

free speech inflicts a continuing harm. . . .").[16]

Not only have Plaintiffs alleged that Houston police officers regularly threaten them with

enforcement of the panhandling ban, Am. Compl. ¶¶ 15, 38, they have also alleged that Mayor

Turner held a press conference to announce that the City intends to "reduce and/or eliminate

panhandling" with an "aggressive anti-panhandling campaign." *Id.* ¶¶ 42, 83. There can be no

question that, shortly before this case was filed, the City has issued a new and serious threat to

aggressively enforce the panhanding ban and stop them from panhandling altogether. Plaintiffs

have alleged injuries that accrue well within the applicable limitations period.

### B.   The Roadway Provision Violates the Free Speech Clause On Its Face

The City does not make a First Amendment argument about two main panhandling ban

provisions Plaintiffs challenge. Am. Compl. ¶¶ 89–90 (silencing and buffer provisions). The City

---

continuing violation because it daily restricted plaintiff's freedom of movement); *Kuhnle Bros.,
Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing
violation of constitutional rights does not become immunized from legal challenge for all time
merely because no one challenges it within two years of its enactment.").

[16] Moreover, the City's argument under Texas Local Government Code § 51.003 concerns a
presumption of validity under state law, which is inapplicable here. Plaintiffs bring claims under
federal law, not state law.

argues briefly that the roadway provision is constitutional. The roadway provision permits only authorized City employees to block traffic, and permits them to do so only to solicit donations to a charitable organization. The law prohibits all other speakers from blocking traffic, and prohibits all other speech, like panhandling for contributions to an individual. Hous., Tex. Code § 40-27(b), (d); Tex. Transp. Code §§ 552.007(c), 552.0071 (a).

The roadway provision violates the Free Speech Clause on its face. It is a content-based restriction that cannot withstand strict scrutiny, and it thus "lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citation omitted).

> ### 2.  The Roadway Provision Is a Content-Based Restriction on Protected Expression in a Traditional Public Forum

Ms. Kohr and Mr. Colton seek to panhandle in violation of the roadway provision. Am. Compl. ¶¶ 13–14, 37–38. Panhandling is protected expression under the Free Speech Clause. The Supreme Court has explicitly held that "solicitation of contributions to charity" is protected expression. *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1664 (2015); *see Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980).[17] And expression on "public ways and sidewalks" receives a "special . . . First Amendment protection," in part because "[t]here, a listener often encounters speech he might otherwise tune out." *McCullen v. Coakley*, 134 S. Ct. 2518, 2528–29 (2014) (alterations and citations omitted).

As the Supreme Court recently held in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226–27 (2015), content-based restrictions on protected expression, like panhandling, are almost always

---

[17] Panhandling, specifically, is protected. *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015); *Speet v. Schuette*, 726 F.3d 867, 875 (6th Cir. 2013); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013); *Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000); *Smith v. City of Ft. Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999); *Loper v. N.Y. City Police Dep't*, 999 F.2d 699, 704 (2d Cir. 1993).

unconstitutional. This holds true "regardless of the government's benign motive . . . or lack of animus toward . . . the regulated speech." *Id.* at 2228. A restriction is content based if "on its face [it] draws distinctions based on the message a speaker conveys," if it "cannot be justified without reference to the content of the regulated speech," or if it is adopted "because of disagreement with the message the speech conveys." *Id.* at 2227 (alterations and citations omitted).

*Reed* has prompted an unprecedented wave of decisions deeming panhandling bans to be content-based restrictions. *Norton v. City of Springfield*, 806 F.3d 411, 413 (7th Cir. 2015); *Homeless Helping Homeless, Inc. v. City of Tampa*, No 15-cv-1219, 2016 WL 4162882, at *5 (M.D. Fla. Aug. 5, 2016); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218, 235–37 (D. Mass. 2015); *McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 185–86 (D. Mass. 2015); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1292–94 (D. Colo. 2015); *Champion v. Commonwealth*, 520 S.W.3d 331, 337–38 (Ky. Feb. 16, 2017); *City of Lakewood v. Willis*, 375 P.3d 1056, 1063 (Wash. 2016) (en banc). One district court put it bluntly: "Post *Reed*, municipalities must go back to the drafting board." *Thayer*, 144 F. Supp. 3d at 237.

Houston's panhandling ban falls squarely within the reasoning invalidating other bans post-*Reed*. The roadway provision permits people to block traffic only to solicit contributions to tax-exempt organizations, but prohibits doing so for any other purpose or to communicate any other message.[18] *E.g. McLaughlin*, 140 F. Supp. 3d at 185 ("He could ask passersby to sign a petition, but not a check."). Further, the roadway provision compounds this content-based restriction by permitting only authorized city employees to make such solicitations for charity,

---

[18] Sections 40-27(b) (prohibiting impeding use of a roadway), 40-27(f) (exempting people authorized under Texas Transportation Code Section 552.0071(a), which permits authorization only for government employees, and only to solicit charitable contributions under Section 552.007, which defines "charitable contributions" as contributions to tax-exempt organizations).

while banning all other speakers from doing so. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341 (2010) ("The Government may not . . . deprive the public of the right and privilege to determine for itself what . . . speakers are worthy of consideration."). By prohibiting unauthorized speakers from blocking a roadway to ask for help, or express need by other communication like "I'm a homeless vet" or "I'm hungry," the roadway provision "raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992).

### 3.    The Roadway Provision Fails Strict Scrutiny

Content-based restrictions like the roadway provision are "presumptively unconstitutional" and trigger strict scrutiny. *Reed*, 135 S.Ct. at 2226. The roadway provision fails strict scrutiny because it is not the least restrictive means of achieving a compelling government interest. *McCullen*, 134 S. Ct. at 2530. It does not advance any interest *at all*. Obstructing a Highway, Texas Penal Code Section 42.03, already criminalizes the act of rendering passage down a road or sidewalk "unreasonably inconvenient or hazardous." A duplicative local provision, with a carveout for favored speakers and messages, does not advance any legitimate interest.

The City's argument on this point is baffling. The sole interest the City identifies is "the safety and convenience of people in [] use [of city streets]." Mot. to Dismiss at 9. For this proposition, the City cites *Cox v. Louisiana*, 379 U.S. 536 (1965), a case that strongly supports Plaintiffs' argument. *Cox* concerned a Baton Rouge statute that "on its face preclude[d] all street assemblies and parades," but the city made exceptions "based on arrangements made with officials." 379 U.S. at 555–56 (alterations omitted). Notwithstanding the city's legitimate interest in safety on its streets, the Supreme Court held:

> It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups either by use of a statute providing a system of broad discretionary licensing power or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute.

*Id.* at 557–58. The same holds true here. The City cannot possibly demonstrate that the roadway provision is the least restrictive means of protecting the "safety and convenience" of people on the streets and sidewalks. Why is it sufficiently safe if City employees block a road, but no one else? Why is it sufficiently safe when someone blocks a road to ask for money for a tax-exempt organization, but not to express any other message? Why aren't other ordinances sufficient to protect the City's interest? The City hasn't even bothered to make an argument. Simply pointing to a legitimate government interest is nowhere near the showing required to justify a content-based restriction. *McCullen*, 134 S. Ct. at 2530. Plaintiffs have stated a claim that the roadway provision violates the First Amendment.[19]

## IV.   The Panhandling Ban is Standardless and Invites Discriminatory Law Enforcement

In addition to violating the First Amendment, two portions of the panhandling ban are unconstitutionally vague. A stringent vagueness standard applies to criminal statutes. *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001). Under this heightened standard, a law is vague if it "(1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Id.* at 421; *Hill*, 789 F.2d at 1110 (striking law that placed "virtually unfettered

---

[19] Even if the court held the roadway provision to be content-neutral, it would still fail intermediate scrutiny, which in this context also requires narrow tailoring. *McCullen* 134 S. Ct. at 2530. As discussed above, the City has not met its burden to "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government interests." *Id.* at 2540. *Accord Cutting v. City of Portland*, 802 F.3d 79, 92–93 (1st Cir. 2015) (invalidating content-neutral ordinance prohibiting standing in the median); *Reynolds v. Middleton*, 779 F.3d 222, 232 (4th Cir. 2015) (same); *Thayer*, 144 F. Supp. 3d at 238 (same).

discretion in the hands of the Houston police" (internal quotation and alteration marks omitted)). The panhandling ban fails on both fronts.  The ban would be vague in any context, and it falls far short of the "greater specificity" demanded of laws that restrict protected conduct under the First Amendment. *Kramer v. Price*, 712 F.2d 174, 177 (5th Cir. 1983).

### A.    The Panhandling Ban Does Not Give Fair Notice of What Is Illegal

The panhandling ban, which forbids panhandling in designated public spaces[20] and upon a "request" to desist, restricts conduct defined as "solicitation." Hous., Tex. Code § 28-46(a). By failing to "give ordinary people fair notice of the conduct it punishes," the ban is unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The ban provides no clear guidance on what conduct is prohibited as "panhandling" and thus would subject an individual to criminal penalties.  Key terms lack any adequate definition, and are compounded by additional open-ended terms within each definition, leaving the definitions virtually boundless. It is impossible for a person to know what ordinary human interactions would subject them to criminal citation or arrest.

First, the term "solicitation" is unconstitutionally vague.  A wide range of conduct may *or may not* fall within this definition:

> *Solicitation* means the act of panhandling by seeking through a communication with another person, whether by gesture or verbally, funds or goods for food, personal favors (such as trips, transportation, clothing, or other), drink, lodging, vehicle fare, or any other purpose to directly benefit an individual or his family members.

§ 28-46(a). The entire definition of "solicitation" is qualified by the slang term "panhandling,"

---

[20] Within eight feet of any "ATM, pay telephone, parking meter, parking fee collection box, transit facility, fuel dispensing device, or outdoor dining establishment, including, but not limited to, a sidewalk cafe." Hous., Tex. Code § 28-46(d).

but "panhandling" itself is undefined.  Nor does the law specify what constitutes a "gesture" and whether holding a written sign (a common form of "panhandling") would be prohibited. These ambiguities are further compounded by invocation of the catchall term "or other"—*twice*.

Taken together, terms used within this definition potentially criminalize an outrageously broad scope of everyday behaviors: stating facts like "I'm thirsty" or "I'm a homeless vet"; engaging in core political speech like "Houstonians should do something to help people experiencing homelessness"; discussing a job opening with a potential employer, or a charitable or business venture with a potential donor; or asking someone for a tissue. The statute lacks any definition to give people notice about whether any of these are examples of "panhandling."

On top of the unclear and wildly broad definition of "solicitation," the panhandling ban requires anyone in Houston to stop their "solicitation" and back eight feet away upon "request." Hous., Tex. Code § 28-46(b). The definition of "request" is similarly unclear and broad:

> *Request* means any imperative instruction, whether verbal or non-verbal, by a solicitee to a solicitor to desist the solicitation including but not limited to words or gestures such as "stop," "back off," "stay back," "get away," "leave me alone," or "withdraw."

§ 28-46(a). Neither this definition, nor any other provision in the ordinance, explains what is meant by a "non-verbal" "imperative instruction . . . to desist." This definition potentially entails a broad scope of everyday behaviors—including refusing to make eye contact, breaking eye contact once made, or putting in headphones—and the law provides no standard to give people notice of when these ordinary behaviors trigger a duty to back away.

### B.    The Panhandling Ban Grants Virtually Unfettered Discretion to the Police

While giving the public fair notice of crimes is critical, "the more important aspect of vagueness doctrine 'is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v.*

*Goguen*, 415 U.S. 566, 574 (1974)). The panhandling ban lacks these minimal guidelines

according to the holding of *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). Striking

down a law that criminalized homelessness by outlawing behaviors like "nightwalking" or

"strolling . . . without lawful purpose," the Court held that "where the list of crimes is so all-

inclusive and generalized," it "results in a regime in which the poor and the unpopular are

permitted to stand on a public sidewalk only at the whim of any police officer." *Id.* at 166, 170

(citations and alterations omitted). The Court further observed:

> The implicit presumption in these generalized vagrancy standards—that crime is
> being nipped in the bud—is too extravagant to deserve extended treatment. Of
> course, vagrancy statutes are useful to the police. Of course, they are nets making
> easy the roundup of so-called undesirables. But the rule of law implies equality
> and justice in its application. Vagrancy laws of [this] type teach that the scales of
> justice are so tipped that even-handed administration of the law is not possible.

*Id.* at 171. The exact same can be said of Houston's panhandling ban. By passing generalized

standards outlawing the everyday behaviors listed above, Houston has subjected homeless

peoples' interactions with their wealthier neighbors to the whim of the police.

Cases applying *Papachristou* are equally relevant and bear mention. In *Hill v. City of

Houston*, the Fifth Circuit read *Papachristou* to invalidate a Houston ordinance which prohibited

"opposing, molesting, abusing, or interrupting a policeman" as impermissibly vague, holding

that "[t]he ordinance places virtually 'unfettered discretion in the hands of the Houston police.'"

789 F.2d at 1110–11 (internal quotation and alteration marks omitted). Given the unclear and

potentially broad scope of conduct the police could arrest people for under the panhandling ban,

the same outcome is required here.

In *Kolender*, the Supreme Court read *Papachristou* to invalidate a statute mandating that

people provide "credible and reliable" identification to an officer upon request, holding that "the

State fails to establish standards by which the officers may determine whether the suspect has complied," leaving too much "potential for arbitrarily suppressing First Amendment liberties[.]" 461 U.S. at 353, 359, 361. The same is true for the undefined term "panhandling" in this case.

Finally, *City of Chicago v. Morales*, 527 U.S. 41 (1999), held that *Papachristou* forbade a law prohibiting loitering with a gang member "with no apparent purpose," because the law employed an inherently subjective standard that invited discriminatory enforcement by the police. *Id.* at 61. Again, in this case, determining whether a communication qualifies as "solicitation" depends on each officer's interpretation of "panhandling," a slang term.

The common theme in these cases requires the same outcome. Guilt must depend on a predictable and objective standard, not the subjective judgment of a police officer. Houston's panhandling ban provides no objective standard by which officers may determine whether a particular phrase or gesture "seeking funds" is " panhandling." Nor does the ban provide a standard for determining what constitutes a request to "desist." Under *Papachristou* and other controlling authority cited above, the panhandling ban is unconstitutionally vague.

## V.     The Property Ban Violates the Fourth Amendment

The City argues that the property ban does not authorize a seizure of property, and therefore, does not implicate any Fourth Amendment protections. Mot. to Dismiss at 10.  This claim is inaccurate: the City mischaracterizes the effect of enforcing the property ban. Not only does the ban authorize citation or arrest for possession of a certain amount of property, thereby forcing people without storage access to abandon their property: police officers have further threatened homeless people with the seizure and summary destruction of their property under the ban. Am. Compl. ¶ 54. This enforcement action is an unreasonable seizure.

### A.     Homeless People Have a Possessory Interest in Their Property

Just like everyone else, people experiencing homelessness have a possessory interest in their property, which entitles them to Fourth Amendment protection. *E.g.*, *Soldal v. Cook Cnty.*, 506 U.S. 56, 68 (1992) (holding that seizures of property must comply with the Fourth Amendment). This possessory interest remains intact even when someone brings their belongings into a public place. *Id.*; *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012) (holding that the City interfered with homeless individuals' possessory interests in their property when it "seiz[ed] and destroy[ed] [their] unabandoned legal papers, shelters, and personal effects"). The possessory interest remains strong even if the property is criminalized by statute or ordinance. *Id.* at 1029 ("Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property."); *see also United States v. Paige*, 136 F.3d 1012, 1021 (5th Cir. 1998) (citing *Soldal*, 506 U.S. at 62–63).

### B.   The Property Ban, Both Categorically and in its Threatened Enforcement, Interferes With Plaintiffs' Possessory Interest

The City is correct that a seizure occurs when there is "some meaningful interference with an individual's possessory interests." Mot. to Dismiss at 10 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). This interference is the unavoidable result of the property ban for unsheltered homeless people in Houston, who "have no place else to store and access their possessions." Am. Comp. ¶ 137; *see also id.* ¶¶ 9, 22, 32. The property ban requires them to abandon any personal property over the limit imposed by the ordinance. Hous., Tex. Code § 21-61 (2017); Am. Compl. ¶¶ 22, 32, 138. Such compelled abandonment means that a person cannot meaningfully exercise her interests in possessing such property. *See United States v. England*, 971 F.2d 419, 420 (9th Cir. 1992) ("It is the extent of the interference with the [individual's] possessory interest in his property, not the physical movement of the property, that determines

whether a seizure has occurred.").[21]

But even if the plain text of the ordinance was not enough, Plaintiffs have alleged that throughout April and May 2017, officers threatened varying and harsh enforcement plans for these provisions, each of which infringes on Plaintiffs' possessory interests in their property. For example, officers told encampment residents: "Residents will be cited if they do not throw away enough of their possessions. Or: A dump truck will come through camp, and officers will grab anything that violates the ban and throw it into the dump truck. Or: Residents must choose property they want to discard and throw it into the dump truck themselves." Am. Compl. ¶ 54.

Such interference is meaningful: the impact of such seizures would be devastating to the the Plaintiffs. Each Plaintiff possesses property that would violate the ordinance's provisions: tents, which they use to shelter themselves from weather, pests, prying eyes, and violence, Am. Compl. ¶¶ 7, 16, 26; bicycles, which they use to travel to housing assistance offices, interviews, shower facilities, and food-distribution sites, Am. Compl. ¶¶ 10, 22, 33; and food, winter clothes, and other items, Am. Compl. ¶¶ 10, 22, 32. Without these possessions, Plaintiffs will struggle to keep themselves safe and access the services they need. *E.g.*, *Lavan*, 693 F.3d at 1030.

Both by its own terms and through the enforcement threatened by City officers, the property ban meaningfully interferes with Plaintiffs' possessory interests in their property, thereby subjecting them to a Fourth Amendment seizure.

### C.    Seizure of Property Resulting from the Property Ban Is Unreasonable

Because the City contends that the property ban does not authorize any seizure, the City

---

[21] Nothing in Fourth Amendment jurisprudence requires more. "The Supreme Court [has] made clear that the protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished." *See Paige*, 136 F.3d at 1021 (citing *Sodal*, 506 U.S. at 62–63); *see also United States v. Jones*, 565 U.S. 400, 406–09 (2012).

makes no attempt to justify such a seizure, nor could it: the seizure resulting from the ban is patently unreasonable. "Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Defendant have not and could not identify any applicable exceptions to the warrant requirement.

A closer look at the Plaitniffs' possessory interests compels the same conclusion. *See, e.g.*, *United States v. Place*, 462 U.S. 696, 703 (1983) (weighing the parties' respective interests to determine reasonableness in a warrantless seizure context). In these circumstances, Plaintiffs' interests are at their height. Plaintiffs have alleged deprivation of possessory interests with serious life consequences. The deprivation includes Plaintiffs' homes themselves. Am. Compl. ¶¶ 7, 16, 26. The deprivation also includes food, warm clothing, tools used to generate income, and bicycles that allow them to travel to housing appointments, food donation areas, job interviews, and shower facilities. *Id.* ¶¶ 10, 22–23, 32–33; *id.* ¶ 82 ("By criminalizing possession of certain property in public, the camping ban effectively prohibits unsheltered homeless people from possessing that property at all."). These are the types of possessory interests that courts weigh most heavily, and which the Fourth Amendment is designed to most carefully protect. *E.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976) (reminding that the "sanctity of private dwellings" are "ordinarily afforded the most stringent Fourth Amendment protection").

Conversely, the City's interest is low. The government has little, if any, interest in summarily destroying Plaintiffs' property that could not be achieved by noticing a clean-up date and allowing Plaintiffs to store and tag belongings. For this reason, courts have repeatedly held summary destruction of property to be unreasonable. *See, e.g.*, *Jacobsen*, 466 U.S. at 124 ("[A]

seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'"); *Lavan*, 693 F.3d at 1030 ("[E]ven if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable."); *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977–78 (9th Cir. 2005) ("The Fourth Amendment forbids . . . the destruction of a person's property, when that destruction is unnecessary—*i.e.*, when less intrusive, or less destructive, alternatives exist."); *Ellis v. Clark Cnty. Dep't of Corr.*, No. 15-CV-5449, 2016 WL 4945286, at *10 (W.D. Wash. Sept. 16, 2016) (holding that the County violated the Fourth Amendment when it seized and destroyed the homeless plaintiffs' property); *Smith v. City of Corvallis*, No. 14-CV-1382, 2016 WL 3193190, at *6 (D. Or. June 6, 2016) (finding that the homeless plaintiffs alleged a violation where the City discarded property immediately after seizure, and failed to provide sufficient notice or procedural protections to people who were not aware of the notice); *L.A. Catholic Worker v. L.A. Downtown Indus. Bus. Improvement Dist.*, No. 14-CV-7344, 2015 WL 13649801, at *3–4 (C.D. Cal. Jan. 13, 2015) (holding that seizing unabandoned property without notice, even when storing it for ninety days after disposing of any perishable, soiled, or wet items, was unreasonable under the Fourth Amendment). Accordingly, Plaintiffs have alleged sufficient facts to demonstrate that the seizure is unreasonable and violative of the Fourth Amendment.

## CONCLUSION

The Court should deny the City's motion to dismiss. In the alternative, Plaintiffs request leave to amend their pleading.

Respectfully Submitted,

By:    /s/ Trisha Trigilio

Trisha Trigilio
Attorney-in-charge
State Bar No. 24075179
S.D. Tex. Bar No. 2461809
Andre Segura
State Bar No. 24107112
S.D. Tex. Bar No. 3123385
American Civil Liberties Union
Foundation of Texas
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Phone 713.942.8146
Fax 713.942.8966
ttrigilio@aclutx.org
asegura@aclutx.org

Kali Cohn
Texas Bar. No. 24092265
S.D. Texas Bar No. 3053958
American Civil Liberties Union
Foundation of Texas
6440 N. Central Expressway
Dallas, TX 75206
Tel: 214-346-6577
Fax: 713-942-8966

Tristia Bauman
D.C. Bar No. 1016342 (admitted *pro hac vice*)
National Law Center on Homelessness & Poverty
2000 M Street NW, Suite 210
Washington, DC 20036
(202) 638-2535 x. 102
tbauman@nlchp.org

H. Joseph Escher III
California Bar No. 85551 (admitted *pro hac vice*)
Dechert LLP
One Bush Street
Suite 1600
San Francisco, California 94104
Tel.: 415-262-4500
Fax: 415-262-4555

Joseph M. Abraham
Texas Bar No. 24088879
S.D. Tex. Bar No. 2847789
Timothy F. Dewberry
Texas Bar No. 24090074
S.D. Tex. Bar No. 2885846
Dechert LLP
300 West 6th Street, Suite 2010
Austin, Texas 78701
Tel.: 512-394-3000
Fax: 512-394-3001

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I certify that this brief will be filed via the Court's ECF system, which will serve the brief on all counsel of record.

Respectfully Submitted,

By:       /s/ Trisha Trigilio

Trisha Trigilio
Attorney-in-charge
State Bar No. 24075179
S.D. Tex. Bar No. 2461809
American Civil Liberties Union
Foundation of Texas
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Phone 713.942.8146
Fax 713.942.8966
ttrigilio@aclutx.org